UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF BEN CUNNINGHAM, et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.: 3:26-cv-1185-CAB-JAC

**ORDER DENYING MOTIONS TO DISMISS FIRST AMENDED COMPLAINT WITH RESPECT TO DEFENDANTS BEBAL AND BEENE**

**[Doc. Nos. 21, 22]**

On February 24, 2026, Plaintiffs Estate of Ben Cunningham, by and through its successors-in-interest B.N.C. and Jeremiah Cunningham ("Estate"), B.N.C., Jeremiah Cunningham, and Pamela Cunningham Solano (collectively, "Plaintiffs") sued Defendants County of San Diego and several individual defendants for the death of Ben Cunningham ("Decedent") from injuries sustained while detained at San Diego Central Jail ("SDCJ"). [Doc. No. 1.] Individual Defendants Chasity Beene ("Beene") and Brenda Bebal ("Bebal")—nurse practitioners who cared for Decedent during his time at SDCJ—each filed a motion to dismiss the First Amended Complaint, [Doc. No. 17 ("FAC")], pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. Nos. 21, 22.] The Court addresses the two motions in this order. For the reasons set forth below, the Court **DENIES** both motions to dismiss.

///

# I. BACKGROUND

## A. Events Leading to Decedent's Death

On a motion to dismiss for failure to state a claim, the Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiffs. *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007).

On January 28, 2024, Decedent was arrested by San Diego police officers. [FAC at ¶¶ 34–35.] Earlier that day, Decedent was treated for serious liver and kidney issues but had left the hospital against medical advice. [*Id.* at ¶ 40.] Beene is a contracted nurse practitioner who was responsible for the medical treatment decisions during Decedent's intake at SDCJ. [*Id.* at ¶¶ 28, 40, 43–47, 58–61.] During intake, Decedent reported to Beene and other jail staff his recent hospital visit, his alcohol dependency, and his recent use of alcohol and benzodiazepine. [*Id.* at ¶¶ 40, 51–52.] Plaintiffs also allege that their nephrology expert reviewed Decedent's medical records after his death and believes that Decedent had alcoholic hepatitis and would have appeared "obviously jaundiced" at the time of his intake. [*Id.* at ¶ 42.]

Plaintiffs allege that pursuant to Sheriff's Department policy and procedure, Decedent should have been transported to the hospital or at least placed in a medical observation bed at SDCJ due to his recent discharge from the hospital against medical advice, health issues, and recent use of alcohol and benzodiazepine. [*Id.* at ¶¶ 45–46.] Instead, Decedent was placed in non-medical housing at SDCJ after intake.

Plaintiffs also allege that SDCJ's medical staff policies and procedures required that patients like Decedent with "[a]ctive alcohol withdrawal treatment" "must be placed in a lower bunk and on the lower tier." [*Id.* at ¶ 63.] Pursuant to this policy, Plaintiffs allege that Beene was required to flag the need for a low bunk and tier along with the reason why and to "notify the corresponding housing deputies of the restriction." [*Id.* at ¶ 66.] Plaintiffs allege that neither Beene nor any other medical staff member did so. [*Id.* at ¶¶ 67–68.]

While being taken to his cell, Decedent informed a Deputy of his medical concerns, specifically "that he had just been in the hospital, had issues with his gallbladder, had a swollen liver, had rectal bleeding, and needed medication." [*Id.* at ¶ 75.] Despite this, and against policy and procedure, Decedent was given the top bunk of a three-bunk bed. [*Id.* at ¶¶ 72, 78.] Plaintiffs also allege that Decedent "was obviously inebriated and slurring his words" when he was initially placed in the top bunk. [*Id.* at ¶ 74.]

A few hours later, "[b]ased on medical records and witness statements, [Decedent] fell from the top bunk and lost consciousness." [*Id.* at ¶ 85.] Plaintiffs allege that this fall caused "grave injuries that later resulted in his death at the hospital a few weeks later." [*Id.* at ¶ 84.] Bebal is the contracted nurse practitioner who was assigned to care for the Decedent after his fall. [*Id.* at ¶ 24.]

After Decedent's fall, Plaintiffs allege that SDCJ medical staff, including Bebal, did not timely assess or treat Decedent's "life-threatening injuries." [*Id.* at ¶ 87–91.] Camera footage shows that, at some point, "a female nurse peer[ed] into the window of the closed door of the holding cell for fewer than *two minutes*." [*Id.* at ¶ 92 (emphasis in original).] According to Bebal's clinical encounter note, Bebal assessed Decedent "cell side." [*Id.* at ¶ 91.] In her note, Bebal stated that Decedent was "uncooperative and/or did not want proper medical care" and that he "refused" to stand. [*Id.* at ¶¶ 97–98.] Plaintiffs allege that this was falsely reported by Bebal and that Decedent was physically unable to stand after his fall (not that he refused) and that Decedent had been cooperative with jail staff since arriving. [*Id.*] The only treatment Bebal ordered for Decedent was for Decedent's vitals to be taken every other day. [*Id.* at ¶ 107.] Bebal did not send Decedent to the hospital for further evaluation following his fall.

More than 24 hours after Bebal's assessment of Decedent, Decedent was reassessed by a different medical provider and sent to the emergency room. [*Id.* at ¶ 110.] In this second assessment, Decedent "complained of symptoms of fatigue, a headache, light-headedness, confusion, slow speech, pain on head, chest, and hip, bloating of his abdomen (which was a sign he was bleeding into his belly), and he had been diagnosed with an

enlarged liver." [*Id.* at ¶ 115.] The attending nurse practitioner "recognized the severity of his condition" and sent him to the hospital. [*Id.* at ¶ 116.] Plaintiffs allege that the 24-plus-hour delay in sending Decedent to the hospital worsened his injuries "to the point that he would not be able to recover from them." [*Id.* at ¶ 112.]

Once at the hospital, Decedent was sent to a trauma center for his intraabdominal injuries. [*Id.* at ¶ 119.] Decedent suffered several injuries from his fall: head trauma, abdominal and chest bruising, distended abdomen, intraabdominal hemorrhage, and hemorrhagic shock. [*Id.* at ¶ 111.] On February 25, 2024, Decedent died. [*Id.* at ¶ 122.]

**B. Proceedings Following Decedent's Death**

After Decedent's death on February 25, 2024, the registrar of vital records issued a death certificate on March 11, 2024 with the cause of death listed as "PENDING." [*Id.* at ¶ 160.] The autopsy report remained sealed until "mid-to-late-February 2026." [*Id.* at ¶ 165.]

On April 6, 2024, Plaintiffs Pamela Cunningham Solano and Jeremiah Cunningham first met with an attorney. [*Id.* at ¶ 161.] Plaintiffs allege that at the time, they were unaware of any facts relating to medical negligence. [*Id.* at ¶ 161.] Plaintiffs Pamela Cunningham Solano and Jeremiah Cunningham believed Decedent had been beaten by his cellmates or officers at the jail. [*Id.* at 26 n.5.] The attorney tried to investigate the cause of death, but he did not "uncover[] any meaningful detail about what happened in the jail and certainly did not learn of NP Beene's or NP Bebal's involvement in causing [Decedent's] death." [*Id.* at ¶ 164.]

On July 25, 2024, Plaintiffs filed an administrative tort claim with San Diego County. [*Id.* at ¶¶ 6, 163.]

On March 6, 2025, Plaintiffs filed their original complaint in California state court against the County and Doe defendants for claims arising out of Decedent's death. [*Id.* at ¶ 166; *Estate of Ben Cunningham v. Cnty. of San Diego*, No. 25CU011812C (Cal. Super. Ct. filed Mar. 6, 2025).] When Plaintiffs received jail medical records on March 24, 2025, they learned that Beene and Bebal were the nurse practitioners involved in Decedent's

medical treatment at SDCJ. [*Id.* at ¶ 167.] On July 7, 2025, Plaintiffs filed an amended complaint in state court naming Beene and Bebal as defendants. [*Id.* at ¶ 172.] On February 24, 2026, Plaintiffs filed the current action alleging federal claims under 42 U.S.C. § 1983 ("Section 1983"). [Doc. No. 1.]

On June 11, 2026, Plaintiffs filed the operative FAC, which added the state law causes of action and consolidated the original state court case with this federal action. [FAC at ¶¶ 7–8.] Five of the FAC's nine counts name Beene and Bebal: (1) Section 1983 claim for deliberate indifference to Decedent's medical needs; (2) Section 1983 claim for deprivation of companionship and society; (3) violation of California Government Code § 52.1 (Bane Act); (4) negligence; and (5) wrongful death. Beene and Bebal both move to dismiss all claims against them.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' [or] 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 550, 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

///

# I. ANALYSIS

## A. First Cause of Action: Deliberate Indifference to Decedent's Medical Needs

Plaintiffs allege that Beene and Bebal were deliberately indifferent to Decedent's medical needs, both before and after his fall. Since Decedent was a pretrial detainee, claims relating to his conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment and so an *objective* deliberate indifference standard applies. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). Plaintiffs must therefore allege sufficient facts to show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. As for the third element, the Ninth Circuit has held there must be "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* "Neither mere lack of due care, nor an inadvertent failure to provide adequate medical care, nor even medical malpractice, without more, is sufficient to meet" the objective deliberate indifference standard. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 636 (9th Cir. 2021) (citation modified).

### *i. Defendant Chasity Beene*

Beene is a nurse practitioner who was employed by a third-party company, Naphcare, and contracted by San Diego County to provide medical services at SDCJ, where Decedent was detained. [FAC at ¶ 28.] According to Plaintiffs, Beene did not properly evaluate or treat Decedent during his intake. Plaintiffs allege that, despite knowing about Decedent's recent hospital stay, serious comorbidities, and use of alcohol and drugs, and

contrary to policy and procedure, Beene did not (1) transport Decedent to a hospital, (2) place him in a medical observation bed, or (3) input a flag for a low bunk. [*See id.* at ¶¶ 47, 58.] Plaintiffs allege that any of these three options would have prevented Decedent's deadly fall from the top bunk. [*Id.* at ¶¶ 55–57, 62.]

Beene first argues that Plaintiffs' failure to allege any specific, personal participation by Beene in Decedent's intake and initial medical evaluation falls short of federal pleading standards.[1] [Doc. No. 21 at 11.] The Court disagrees. The FAC repeatedly alleges that Beene participated in Decedent's medical care during intake, was aware of Decedent's recent drug and alcohol use, alcohol dependency, and medical history, and still failed (1) to send Decedent to the hospital, (2) to place Decedent in a medical observation bed, or (3) to flag Decedent for a low bunk. [FAC at ¶¶ 40, 43–44, 47, 53, 65.] These allegations constitute specific allegations regarding Beene's personal involvement in Decedent's medical care sufficient for purposes of a motion to dismiss.

Beene further argues that Plaintiffs do not allege any "intentional decision" by Beene regarding Decedent's care that satisfies the first element of the *Gordon* test. [Doc. No. 21 at 11.] Again, the Court disagrees. Plaintiffs have alleged that, as the nurse practitioner involved in Decedent's medical intake, Beene was responsible for medically evaluating Decedent and making decisions regarding his medical care, like whether he should be transported to the hospital, housed in a medical observation bed, or flagged for a bottom bunk. Beene's decision not to order any of these three treatment options does not transform her actions into something unintentional. *See Benitez v. Cnty. of San Diego*, No. 25-CV-1143 TWR (DDL), 2026 WL 252373, at *15–16 (S.D. Cal. Jan. 30, 2026) (finding an intake nurse "engaged in intentional objectively unreasonable conduct" when she marked

---

[1] In their FAC, Plaintiffs alternatively plead that medical staff (which presumably includes Beene) did enter an order for a low bunk, but that other staff did not follow the order. [FAC at ¶ 69.] With the start of discovery, Plaintiffs received responses that "Beene was the medical provider responsible for entering the flag for a low bunk and that no flag was entered for sworn staff to see." [Doc. No. 27 at 12.] Plaintiffs offer to amend the complaint to remove this alternative allegation. The Court finds this unnecessary.

a detainee "fit to continue" the booking process without treatment for his alcohol withdrawal). The allegations that Beene knew that Decedent was detoxing and had existing medical issues, knew SDCJ's relevant policies and procedures, and that a reasonable nurse practitioner would have known of the dangers in a similar situation, yet did not send Decedent to the hospital, place him in a medical observation bed, or flag him for a low bunk are sufficient to plausibly allege an intentional decision by Beene regarding Decedent's medical care.

Lastly, Beene argues that the allegations against her are "malpractice allegations" and cannot rise to the level of deliberate indifference. [Doc. No. 21 at 12; *see also Fraihat*, 16 F.4th at 636 (explaining that "medical malpractice, without more," falls below the deliberate indifference standard).] For purposes of this motion to dismiss, the Court concludes that Plaintiffs has alleged sufficient facts to state a claim of deliberate indifference. Plaintiffs allege that Decedent was "fully forthcoming" and informed Beene about his recent hospitalization due to liver and kidney issues, his discharge from the hospital against medical advice, his alcohol dependency, and his recent use of alcohol and benzodiazepine. [FAC at ¶¶ 40, 51.] Given the alleged policy and procedure, [*id.* at ¶ 63], it is plausible that a reasonable nurse practitioner performing Decedent's medical evaluation "would have appreciated the high degree of risk involved" and, at a minimum, flagged him for a low bunk. *See Gordon*, 888 F.3d at 1125; *see also Greer v. Cnty. of San Diego*, No. 19-cv-0378-GPC-AGS, 2021 WL 615046, at *5 (S.D. Cal. Feb. 17, 2021) (finding that a jury could conclude that a reasonable nurse who was aware of a pretrial detainee's seizure disorder, and of a nursing protocol for placing such individuals in a low bunk, would have appreciated the "substantial risk of suffering serious harm" without the low bunk assignment); *Benitez*, 2026 WL 252373, at *16. The motion to dismiss the first cause of action against Defendant Beene is therefore **DENIED**.

*ii. Defendant Bebal*

Plaintiffs allege that Bebal did not properly evaluate Decedent after his fall—and may not have evaluated him at all—yet documented his condition and declined to send him

to the hospital or place him in an observation bed when a reasonable nurse practitioner would have done so. [FAC at ¶¶ 24, 87–89, 105, 109.] Plaintiffs also allege that Bebal's clinical notes falsely stated that Decedent did not lose consciousness, did not hit his head, "refused to stand," was uncooperative, and did not want proper medical care. [*Id.* at ¶¶ 95–99.] According to the FAC, however, Decedent "told the male registered nurse, Medical Doe 1, as well as officers that he had [lost consciousness for several minutes]" and was brought into the clinic in a wheelchair because he was unable to stand. [*Id.* at ¶¶ 95, 97.] These allegations identify two related failures: Bebal's failure to adequately assess Decedent and her failure to obtain a higher level of care. Plaintiffs allege that, rather than sending Decedent to the emergency room, Bebal ordered only that his vitals be checked every other day. As a result of this decision, "there was an unreasonably long delay in transporting [Decedent] to the hospital, causing his death." [*Id.* at ¶ 109.]

Bebal first argues that Decedent's symptoms, which could have signaled a substantial risk of serious harm, did not develop until after Bebal's evaluation and so the risk of substantial harm was not apparent to Bebal during her evaluation. [*See* Doc. No. 22-1 at 11.] This argument mischaracterizes Plaintiffs' allegations. Plaintiffs do not allege that these later symptoms are what signaled the substantial risk of serious harm, but that the immediate effects of the fall—Decedent hitting his head, his loss of consciousness, and his inability to stand—put Bebal on notice of a substantial risk of serious harm. [*See* FAC at ¶¶ 93, 97.] Plaintiffs also claim that Bebal did not conduct a real evaluation of Decedent and that given the fall and Decedent's medical history, Bebal's decision not to conduct a more thorough evaluation is what also put Decedent at a substantial risk of serious harm. [*See id.* at ¶¶ 88–93.]

Next, Bebal argues that the allegations that she "did not take vital signs, did not document a head injury assessment, and inaccurately or incompletely described the encounter in her note" "sounds in negligence, not deliberate indifference." [Doc. No. 22-1 at 12.] The Court disagrees. Plaintiffs have plausibly alleged that a reasonable nurse practitioner who was tasked with evaluating an actively detoxing detainee like Decedent

after he fell from his bunk would have known that the detainee would be at "substantial risk of suffering serious harm" from the fall and thus would have performed a more thorough evaluation, ordered more supervision, and/or sent the detainee to the emergency room for clearance. *See Scalia v. Cnty. of Kern*, 493 F. Supp. 3d 890, 899–901 (E.D. Cal. 2019) (denying summary judgment because a reasonable jury could find a nurse was deliberately indifferent when she returned a detainee to a cell after the detainee fell from the top bunk and suffered head trauma).

Lastly, Bebal attacks the final element of the *Gordon* test, arguing that Plaintiffs have not sufficiently pled causation because the FAC contains "no facts isolating NP Bebal's conduct, as distinct from the conduct of the other individuals who interacted with or were responsible for [Decedent] during that same window." [Doc. No. 22-1 at 12–13.] That argument overlooks the FAC's specific allegations concerning Bebal's own conduct. Plaintiffs have alleged sufficient facts to plausibly connect Bebal's conduct to Decedent's death. According to the FAC, Bebal was assigned to care for Decedent after he fell from his bunk and was "the highest-level provider likely available at that time in the jail." [FAC at ¶¶ 24, 103.] Yet the only treatment she prescribed in Decedent's chart was for his vitals to be checked every other day. [*Id.* at ¶ 107.] These allegations support a reasonable inference that Bebal's response to Decedent's fall, including her decision not to send him to the hospital, contributed to his death. Plaintiffs have therefore sufficiently alleged causation.

Though it may ultimately be found that Bebal's actions were reasonable or that her evaluation and decision to delay treatment did not contribute to Decedent's death, those are factual determinations that the Court cannot make at this stage. The motion to dismiss the first cause of action against Defendant Bebal is therefore **DENIED**.

### B. Fourth Cause of Action: Deprivation of Companionship and Society

Plaintiffs B.N.C., Jeremiah Cunningham, and Pamela Cunningham Solano bring a Section 1983 claim for deprivation of companionship and society against Beene and Bebal.

To sustain a claim under this theory, Plaintiffs must plead facts that meet the "shock the conscience" standard. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013). Deliberate indifference will generally be "conscience shocking" as long as the "official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.*

Defendant Beene argues that Plaintiffs' allegations do not shock the conscience because they at most sound in negligent medical care. [Doc. No. 21 at 15.] Defendant Bebal argues that since Plaintiffs have not sufficiently pled that she was deliberately indifferent to Decedent's medical needs, Plaintiffs' derivative loss of companionship also fails. [Doc. No. 22-1 at 13.] Since the Court finds that Plaintiffs have sufficiently pled their deliberate indifference claims with respect to Decedent's medical care, the Court **DENIES** their motions to dismiss the fourth cause of action.

**C. Fifth Cause of Action: Bane Act Violation**

Plaintiffs bring a Bane Act claim against Defendants Beene and Bebal. The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b). The Ninth Circuit has held that the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally different than the constitutional violation alleged. *Reese v. Cnty. of Sacramento*, 888 F. 3d 1030, 1043 (9th Cir. 2018). Also, an adequately pled claim for deliberate indifference satisfies the specific intent requirement of the Bane Act. *See id.* ("[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.").

Defendant Bebal incorrectly argues that Plaintiffs' Bane Act claim fails because they have not alleged facts showing Bebal acted with specific intent to commit the underlying Fourteenth Amendment Due Process violation. [Doc. No. 22-1 at 14–15.] Defendant

Beene provides no argument in favor of dismissing the Bane Act cause of action against her and only asks for all claims against her to be dismissed. [Doc. No. 21 at 6–7.] Since the Court finds that Plaintiffs have sufficiently pled their deliberate indifference claims arising under the Fourteenth Amendment Due Process Clause, the Court **DENIES** Defendants Beene and Bebal's motions to dismiss the fifth cause of action.

**D. Seventh & Ninth Causes of Action: Negligence and Wrongful Death**

The seventh cause of action is a medical negligence claim. The ninth cause of action is a wrongful death action. Defendants Beene and Bebel each argue that Plaintiffs' negligence and wrongful death claims were filed too late and should be dismissed.[2]

The statute of limitations for a medical negligence claim against a heath care provider is "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." Cal. Civ. Proc. Code § 340.5. For a wrongful death claim against a health care provider sounding in professional negligence, the same statute of limitations period applies. *Id.* "Injury" as used in the statute means "both a person's physical condition *and* its negligent cause." *Sanchez v. S. Hoover Hosp.*, 18 Cal. 3d 93, 99 (1976) (emphasis in original) (citation modified).

Beene and Bebal both argue that Plaintiffs' March 6, 2025 negligence and wrongful death claims were untimely because they were filed more than a year after Decedent died on February 25, 2024. Specifically, Beene argues these negligence-based claims started accruing once "Plaintiffs believed Decedent's death resulted from deficient medical care at the San Diego County Jail," with which this Court agrees, but fails to state when Plaintiffs were aware of the "deficient medical care." [Doc. No. 21 at 17.] Bebal similarly argues that "the essential inquiry is when the plaintiff suspected negligence, not when the

---

[2] Bebal moves to dismiss the seventh and ninth causes of action conditionally. That is, Bebal seeks dismissal of the negligence and wrongful death claims only if the first and fourth causes of action are dismissed. Even though Bebal's motion to dismiss the first and fourth causes of action has been denied, the Court still evaluates Bebal's arguments here because Beene has raised similar arguments.

plaintiff learned precisely how the defendant was negligent" and that "Plaintiffs clearly suspected wrongdoing immediately." [Doc. No. 22-1 at 17–18.] But again, "immediately" is not accompanied with a date. In general, it seems Defendants are arguing that Decedent's death started the statutory time clock.

The Court is not convinced that the negligence-based claims accrued the day Decedent died or sometime between his death on February 25, 2024, and March 6, 2024. Accepting the FAC's allegations as true, Plaintiffs were initially unaware of the details surrounding Decedent's injuries or any facts indicating medical negligence played a role in Decedent's death. [FAC at ¶ 161.] At the time of Decedent's death, Plaintiffs Pamela Cunningham Solano and Jeremiah Cunningham thought Decedent had been beaten by his cellmates or officers at the jail. [*Id.* at 26 n.5.] Further, Decedent's death certificate was not issued until March 11, 2024, and even then, the cause of death was listed as "PENDING." [*Id.* at ¶ 162.] Given just these facts, the earliest Plaintiffs could have discovered or "through the use of reasonable diligence should have discovered" Decedent's injuries and their negligent cause was March 11, 2024. *See* Cal. Civ. Proc. Code § 340.5. Plaintiffs filed their state court case on March 6, 2025, within one year of this date.

It is still possible that Plaintiffs had reason to suspect that negligence by the jail's medical staff caused Decedent's death within those nine days following his death on February 25, 2024. However, as the facts are currently alleged in the FAC, the Court cannot find that Plaintiffs suspected or "through the use of reasonable diligence should have discovered" medical negligence by the jail's medical staff on or before March 6, 2024. *See* Cal. Civ. Proc. Code § 340.5; *see also Kan-Di-Ki, LLC v. B.O.N. Clinical Lab'ys, Ltd.*, No. 2:15-CV-05199-SVW-PLA, 2015 WL 13917253, at *5 (C.D. Cal. Oct. 6, 2015) ("The question [of] when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." (citation modified)); *Artal v. Allen*, 111 Cal. App. 4th 273, 280 (2003) ("Whether a plaintiff has exercised reasonable diligence

necessarily depends on the facts of the individual case.”). Defendants Beene and Bebal’s motions to dismiss the seventh and ninth causes of action are **DENIED**.

## III. CONCLUSION

For the reasons stated above, Defendants Beene and Bebal’s motions to dismiss are **DENIED**. Beene and Bebal must file their answers to the FAC by **December 14, 2026**.

It is **SO ORDERED**.

Dated: November 23, 2026

Hon. Cathy Ann Bencivengo
United States District Judge